# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | **CHAPTER 13** |
| **Philip Anthony Robertson** ) | |
| **Brandy Michelle Robertson** ) | |
| ) | **Case No. 13-71986** |
| Debtors. ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the Motion to Pay Notice of Postpetition Mortgage Fees, Expenses, and Charges (the "Motion") filed by the Chapter 13 Trustee, Christopher T. Micale (the "Chapter 13 Trustee"), in nine (9) separate Chapter 13 cases (collectively, the "Motions"), including the above-referenced matter. A Trial Brief in support of the Motions was filed on behalf of the Chapter 13 Trustee on November 20, 2015. A hearing was held on November 23, 2015, at which the Chapter 13 Trustee testified in support of the Motions. For the reasons set forth below, the Motions are granted in part, and denied in part.

## FINDINGS OF FACT [1]

The Chapter 13 Trustee filed the Motions in nine (9) separate Chapter 13 cases, which include the following: *In re Robertson*, Case No. 13-71986; *In re Stuart*, Case No. 14-71217; *In re Whitlow*, Case No. 14-71320; *In re Jones*, Case No. 14-71427; *In re Keister*, Case No. 14-71440; *In re Pickeral*, Case No. 14-71607; *In re Robinson*, Case No. 14-71777; *In re Steele*, Case No. 14-71501; and *In re Beeken*, Case No. 15-70206. In each of these cases, a Chapter 13 Plan was confirmed. In each Motion, the Chapter 13 Trustee seeks payment of postpetition

---

[1] Where appropriate, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact. *See* Fed. R. Bankr. P. 7052, 9014(c).

mortgage fees, expenses, and charges not only in the above-referenced cases, but also "to pay any additional fees asserted hereafter in any notice filed pursuant to Rule 3002.1 *in this case*." Mot. ¶ 5 (emphasis added). However, in his Trial Brief, and at the hearing on the Motions, the Chapter 13 Trustee indicated that he is additionally "requesting a decision authorizing payment of Rule 3002.1 notices *in other cases*," subject to specified conditions. Trial Br. at 1 (emphasis added). The specific conditions requested by the Chapter 13 Trustee, in order for payment of Rule 3002.1 notices to be paid in the above cases and future cases, include the following: (1) payment will not negatively impact any applicable § 1325(a)(4) requirement ("Liquidation Requirement"); (2) a debtor is committing all disposable income to his or her plan; (3) payment will not reduce any noticed dividend of 100%; and (4) due process is satisfied with a provision in paragraph eleven of the form chapter 13 plan to the effect of:

> **Unsecured Creditors Take Notice**: As indicated in paragraph 4.A. of this chapter 13 plan, the percentage you can expect to receive as payment on account of your claim will vary depending on actual claims filed. Furthermore, the debtor(s) proposes to authorize the trustee to pay from the pool of funds available for unsecured creditors any postpetition fees or expenses associated with the debtor(s)' mortgage which are asserted by a creditor pursuant to *Federal Rule of Bankruptcy Procedure* 3002.1. This may further diminish the amount you can expect to receive. If you object to this provision or the amount being paid by the debtor(s) in this chapter 13 plan, you must file an objection with the Clerk of the Court.

*Id.*

The Chapter 13 Trustee also argues that, because in each of the above-referenced cases a Chapter 13 plan has been confirmed, ". . . unless the debtor has funds to pay the claim directly, the debtor would need to move to modify the confirmed plan to provide for payment in some fashion." *Id.* at 2. Further, the Chapter 13 Trustee notes that "any attempt to move to modify the plan to pay such claims could carry with it an additional attorney's fee of $400.00 pursuant to the

2

Court's Standing Order No. 15-1." *Id.* The Chapter 13 Trustee argues that the alternative, i.e. direct payment by the debtor, is "troublesome" because "[d]ebtors with a troubled mortgage history would likely not pay the fees or expenses on their own" and "in cases where a debtor is committing all his [or her] disposable income to the chapter 13 plan, it's questionable whether he [or she] has the funds." *Id.*

According to the Chapter 13 Trustee's testimony, the Chapter 13 trustees in the Eastern District of Virginia and Chapter 13 trustee appearing before the other judge of this Court generally do not pay ongoing mortgages through their offices. Instead, they usually only pay mortgage arrears through the plan, with the debtors making ongoing mortgage payments directly to their home mortgage creditors. The Chapter 13 Trustee further testified that he has an internal "policy," not approved or disapproved by this Court, that if a certain number of post-petition mortgage payments are missed, those ongoing mortgage payments need to be brought inside the Chapter 13 plan such that the plan becomes a "conduit" plan where the trustee pays the ongoing mortgage payment through his office. This "policy" is not followed by the other Chapter 13 trustee in this district, and the Chapter 13 Trustee here testified that the district's other Chapter 13 trustee, in terms of the Rule 3002.1 fees and charges, "does not wish to pay these fees."[2]

In support of his position that he be authorized to pay the Rule 3002.1 fees and charges through his office, the Chapter 13 Trustee cites, among other things, the procedure set up in the District of Kansas, where the judges have uniformly adopted a standing order that "[a]ny notice filed pursuant to Fed. R. Bankr. P. 3002.1(b) or (c) shall be treated as an amendment to the

---

[2] In *In re Quesenberry*, Case No. 12-62001 (August 26, 2013), a Consent Order was entered by Judge Connelly, endorsed by Herbert R. Beskin, the Chapter 13 Trustee who appears before her, providing that the Trustee is not obligated or authorized to pay Rule 3002.1 fees and charges from estate property, given that such notices are for informational purposes only and not amendments to proofs of claims. They remain obligations of the debtor to pay directly. Despite its broad language, this is the only order addressing this issue in the Western District cited to the Court and appears by its terms to be limited to that particular case.

3

creditor's claim and Debtor's plan. The Trustee shall be authorized to disburse the new conduit payment or fees as soon as practicable and without seeking formal modification of the plan." Trustee's Exhibit 2, at ¶V(D).[3] Moreover, the Kansas Standing Order requires *all* delinquent mortgages to be paid through the office of its Chapter 13 trustee. While this policy seems to work well for the Kansas courts, this district does not follow that procedure. In addition to there being no such uniform order, there is no "buy-in" from the other Chapter 13 trustee in this district as to what is being proposed here. Thus, it appears that if the Chapter 13 Trustee's blanket procedure were to be adopted, this Court would be an outlier in terms of procedure between the cases handled by the other judge in this district, as well as the six bankruptcy judges in the Eastern District of Virginia.

In further support of his position, the Chapter 13 Trustee contends that due to his "policy," the number of cases where mortgages are paid inside the plan ("conduit plans") is growing, and he is getting more and more Rule 3002.1 notices with no way to pay them. Leaving payment to the debtors results in confusion and non-payment, according to the Chapter 13 Trustee, causing the debtors to be in default of their mortgage payments at the completion of their plan. The Chapter 13 Trustee asserts these fees and charges are generally not paid by the debtors either because they do not have the money, they do not understand the notices, or they simply do not pay them. Further, the Chapter 13 Trustee contends that allowing him to pay the Rule 3002.1 noticed fees and charges provides a convenient paper trail, such that he can show the mortgage creditor that the fees and charges were paid by his office if a dispute arises.

The Chapter 13 Trustee further contends that the source of the funds for payment should come from the pool of funds noticed to unsecured creditors. His proposed Chapter 13 plan

---

[3] The Chapter 13 Trustee was formerly on the legal staff to the Chapter 13 Trustee in the District of Kansas.

language would put them on notice up front that their pool for distribution may be diminished if post-petition fees and charges need to paid under Rule 3002.1. The rationale for this is that the Chapter 13 Trustee contends it is the debtor's commitment of disposable income that is the focus of the Court, not the dividend being paid to unsecured creditors. So long as the disposable income test is met, and the liquidation test is not impaired, the Chapter 13 Trustee asserts unsecured creditors are no worse off by allowing the Chapter 13 Trustee to pay the Rule 3002.1 fees and charges from their pool of funds.

The Chapter 13 Trustee made much of the fact that the growing "conduit" payments necessitate the inclusion of additional language in future Chapter 13 plans to deal with the Rule 3002.1 payment issue, but the Court finds it curious that of the nine cases brought before the Court in the pending motion, only one of the nine is a "conduit" case. In all other cases, the debtors are paying the mortgage directly.[4] Further, the majority of the charges necessitating increased payments in the cases at issue are for Chapter 13 mortgage creditors reviewing a chapter 13 plan and filing a proof of claim. In none of the cases at issue are fees sought for objections to confirmation or contested matters. Thus, the vast majority of the fees are for relatively small amounts, ranging from $125.00 to a high of $650.00. No fees have been objected to by the Chapter 13 Trustee or the debtors as excessive. One fee, however, is substantially larger, $1,538.00 in Case No. 15-70206 for an "insurance advance," presumably for lapsed insurance.[5]

---

[4] Case No. 14-71320 is the only case the Chapter 13 Trustee has asked the Court to address where he is paying the ongoing mortgage payment.

[5] While none of the fees or charges in the cases currently before the Court are disputed, there may be circumstances in the future where the Chapter 13 Trustee or the debtor do want to contest such fees or charges. This is another reason the Court is not comfortable pre-sanctioning the means of payment by the Chapter 13 Trustee from the unsecured creditors' pool of funds.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. This Court further concludes that this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (L).

The history and purposes behind Bankruptcy Rule 3002.1 are thoroughly and succinctly set forth by Judge Huennekens in *In re Sheppard*, No. 10-33959-KRH, 2012 WL 1344112, 2012 Bankr. LEXIS 1696 (Bankr. E.D. Va. Apr. 18, 2012).

> Bankruptcy Rule 3002.1 was adopted to resolve significant and often hidden problems encountered by Chapter 13 debtors who utilized § 1322(b)(5) of the Bankruptcy Code to cure mortgage defaults in their confirmed plans. While debtors could cure an arrearage on their principal residence under § 1322(b)(5), they often incurred significant fees and other costs as a result of postpetition defaults or from interest or escrow fluctuations under the terms of the original loan documents. Fearful that any attempt to address these fees and charges could be construed as a violation of the automatic stay, many creditors would not inform the debtors that these charges had been incurred until after the Chapter 13 case was closed. As the fees and charges were postpetition obligations not included in the plan and thus not discharged at the conclusion of the case, these debtors would emerge from bankruptcy only to face a substantial and previously undisclosed arrearage. This outcome was inconsistent with the goal of providing debtors with a fresh start.

*Id.* at *2. *Sheppard* further provides that

> Bankruptcy Rule 3002.1 attempts to remedy this problem by requiring creditors to provide debtors with timely notice of any charges or payment changes that may occur postpetition. Specifically, Rule 3002.1(c) requires that holders of claims secured by an interest in the debtor's principal residence and provided for under § 1322(b)(5) must "file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence" within 180 days after the date on which the fees, expenses, or charges

6

> are incurred. Bankruptcy Rule 3002.1(d) specifies that the notice shall be prepared using Official Form B10 (Supplement 2) and filed as a supplement to the holder's proof of claim. Upon receipt of the notice, a debtor or trustee may file a motion requesting that the court determine whether any fee, expense, or charge is required by the underlying agreement and applicable non-bankruptcy law. . . .
>
> As a final safeguard, Rule 3002.1(f) requires the trustee, within thirty days of the debtor's completion of payments under the plan, to file and serve on the holder of a claim, the debtor, and debtor's counsel a notice stating that the debtor has successfully paid the amount required to cure any default on the claim. Rule 3002.1(g) then gives the creditor twenty-one days to file and serve "a statement indicating (1) whether it agrees that the debtor has paid in full the amount required to cure the default on the claim, and (2) whether the debtor is otherwise current on all payments consistent with § 1322(b)(5) of the Code." If the creditor contends that any amounts remain unpaid, the creditor must itemize any arrearages still due and owing.

*Id.* at *2-3.

Significantly, *Sheppard* held that "[t]he Court further concludes that the Chapter 13 Trustee has no obligation to make payments from estate property based upon notices filed under Bankruptcy Rule 3002.1 to supplement proofs of claim. The Trustee is only authorized to make payments based on proofs of claim filed under § 501 of the Bankruptcy Code that are allowed under § 502 of the Bankruptcy Code *or upon specific order of the Court*. A notice filed under Bankruptcy Code Rule 3002.1 to supplement a proof of claim is filed for informational purposes only and does not constitute or otherwise amend the proof of claim it is filed to supplement." *Id.* at *5 (emphasis added). Here, the Chapter 13 Trustee asks that this Court expand upon the phrase "*or upon specific order of the Court*" in *Sheppard* by doing two things: (1) authorize the payment of the post-petition charges noticed under Rule 3002.1 by the Chapter 13 Trustee in the cases at hand, and (2) pre-approve language to be included in the Court's form Chapter 13 Plan that would give the Chapter 13 Trustee authority to pay future Rule 3002.1 charges if certain conditions are met. In both circumstances, the Chapter 13 Trustee proposes that the Rule 3002.1 charges be paid from the pool of funds earmarked for unsecured creditors. For the reasons set

7

forth below, the Court will approve the former request in part, allowing payment by the Chapter Trustee 13 by increasing the debtors' Chapter 13 plan payments without the necessity of filing a modified plan, but denying payment from the pool of funds earmarked for unsecured creditors. The request to pre-approve language in future cases will be denied in its entirety.

While the Chapter 13 Trustee's goals here are noble, the Court does not believe that circumstances are such that a rift need be established between the procedures in this Court and elsewhere in this district, much less the rest of the State. The desire to avoid a $400.00 fee to file an amended plan to address a post-petition charge of a nominal amount is understandable, but the Court believes this issue can be addressed in a less dramatic way. For example, the Chapter 13 Trustee went to great lengths to discuss the audit procedures that are conducted in the various cases he administers and to explain how the additional post–petition charges and fees noticed under Rule 3002.1 are discovered and monitored. If such fees and charges are caught, debtor's counsel can be alerted, if counsel is not also aware of the new charges, and efforts can be made to contact the debtor directly to make him or her aware of those fees—and the need to pay them—especially if the ongoing mortgage payment is one made directly by the debtor. Some debtors may want to pay them and simply get it over with. If direct payment by the debtor is something either the Chapter 13 Trustee or debtor's counsel believes is unworkable in a given case, a simple motion to increase plan payments—without the necessity of an amended plan—should be an adequate solution to modify plan payments. This motion can be filed by the Chapter 13 Trustee or by debtor's counsel, and the Court is not opposed to considering modifications to Standing Order 15-1 to address such a motion by the debtor. The post-petition charges asked to be paid are, for the most part, a small number in the overall scope of an average Chapter 13 plan, and increasing the plan payments a modest, if not miniscule, amount over the

8

remaining life of the plan to curtail those charges should not be overly burdensome to either the Chapter 13 Trustee, the debtor, or debtor's counsel. This will also provide the paper trail that the Chapter 13 Trustee believes is necessary to provide the mortgage lenders at plan completion to show that the debtor is current, especially on "conduit" payments made through the plan. Further, Chapter 13 is not a debtor panacea. Because the Court believes that the cost of maintaining a debtor's principal residence should be shouldered by the debtor, which is consistent with the goals of 11 U.S.C. § 1322(b)(2), the Court does not believe a plan provision should be pre-sanctioned which takes the funds to pay additional charges to keep that residence from the pockets of the unsecured creditors.

In this particular case, the Chapter 13 Trustee "seeks authorization to pay [$200.00] from funds the Debtor(s) is(are) paying the Trustee pursuant to the confirmed plan, and to pay any additional fees asserted hereafter in any notice filed pursuant to Rule 3002.1 in this case." The Court will grant the relief requested, but will require the Debtors in this case to increase their plan payment, with the appropriate trustee's commission, to accommodate payment of the additional fee. The request to pay the fees from the pool of funds earmarked for unsecured creditors is denied. The request that this Court sanction the Chapter 13 Trustee's proposed language in future Chapter 13 plans is likewise denied.[6] Nothing contained here shall prohibit

---

[6] The Court is also reluctant to start chipping away at the form Chapter 13 plan mandated for use by Local Rule 3015-1 by pre-approving additional language which no doubt, by encouragement as a standard provision, will creep into many future plans. It is a slippery slope the Court does not believe is necessary or desirable to start down. However, nothing contained herein is intended to limit the flexibility paragraph 11 of the form plan is intended to provide.

the Chapter 13 Trustee or counsel for the Debtors from bringing an additional motion to increase plan payments should future fees under Rule 3002.1 be incurred and noticed.

A separate order consistent with the Court's ruling herein shall issue.

Decided this 30th day of December, 2015.

/s/ Paul M. Black
UNITED STATES BANKRUPTCY JUDGE

10